Case No. 16-705, Progress v. Donnell, Flora Yes, Your Honor. My name is Roxanna Mason. That's R-O-X-A-N-N-A. M-A-S-O-N. And I represent Mr. Flora. Good afternoon, Your Honor. My name is Mary Hassler-Miller. A-G-T-E-C-N-E-O-P-H-I-N. Thank you both. All right. You may be seated. As you both know, you each have 20 minutes. You do not need to use the entire 20 minutes, but you are free to. Would Ms. Mason like to reserve any part of that for rebuttal? Yes, Your Honor. I would say three minutes. Okay. And please, both of you, keep your voices up. This microphone records, but it does not amplify. Ms. Mason, whenever you're ready. You may please report. My name is Roxanna Mason. I'm from the Office of the State Appellate Defender, and I represent Mr. Flora. There's a lot going on in this case. A lot of witnesses, a lot of facts, a lot of legal issues, and a lot of pain for everyone who is involved on both sides. What we don't have a lot of is time today to get into the details and nuances of all four of the issues that are raised in the briefs. So my hope today, instead of trying to top-back an auctioneer and accomplish that, is instead to look at this case holistically, because all four of the issues really come back to one theme. Accountability. What's required to show it? What's required to have a fair trial on it? And what is an appropriate sentence for someone who's only accountable and not the principal when these sort of acts occur? And there are two types of accountability. Shared intent and common criminal design. And first, I'd love to talk about shared intent. The first part of shared intent is easy. The first issue in the brief is the sufficiency claim, and the state has chosen on appeal to not defend an argument that there is a – that they've provided sufficient evidence of shared intent. So that's out of the way. But issue three also deals with shared intent, and issue three is the issue I most wanted to talk to the court about today. That's the issue dealing with Tony Polk, the jailhouse snitch. The only person who went into court and said that Mr. Flora and his niece Destiny went to that fight with the intent to kill young India. Now, Tony Polk is interesting because Tony Polk wasn't there. Tony Polk didn't see anything, didn't hear anything. Tony Polk was just sitting in the jail when he saw a news story about this case on television. And then he claims that he talked to Mr. Flora, and then he went to the police. Now, what we know, but the jury did not know, is that Tony Polk is a career criminal who was looking at receiving a very stiff sentence for the aggravated robbery he was already trial on. You don't disagree that you forfeited this claim by not including it in your post-trial motion? It's correct that it is not in the post-trial motion. However, we believe that it is addressable under second-pronged plain error pursuant to People v. Ramey. They found that this is, in fact, second-pronged plain error where a trial court denies the defendant's right to introduce this sort of evidence. The evidence here was critical to this case. Counsel, can I ask you, what about the issue of Montgomery? Did the court go through the Montgomery analysis to provide for what prior crimes would be allowed? Yes, the court did go through the Montgomery analysis, but that is insufficient, as Montgomery is irrelevant to the issue that was actually before the trial court. The defense was not attempting to introduce Mr. Polk's extensive list of prior convictions to simply say Mr. Polk is a felon, and therefore he is not guilty. But if you read Rule 609 literally, it suggests that once you've done the Montgomery analysis, that's all you have to do. If you were to read that rule in a vacuum, I agree. But we have to read that rule in the context of the Constitution and the extensive case law in the state of Illinois. Was there any testimony by a quid pro quo on his testimony? The testimony from Mr. Polk is that he was just doing this out of the goodness of his heart. Was there ever any questioning about if he had a reduced sentence? There was no official deal between him and the state. However, there is circumstantial evidence that he did receive a reduced sentence because he has an extensive criminal history. So is that part of the record that was made in question? The fact that he received the six-year sentence is part of the record. The fact that he has the extensive criminal history is part of the record, but not before the jury. The trial judge was aware of it, but not... But anyway, what evidence is there, again, that he did it out of the goodness of his heart? He didn't say that. No, he did. He testified that he was doing it out of the goodness of his heart. What testimony was there about the fact that he was looking at so many years and he got lesser years? He testified as to the range of punishment that he was facing, which I believe was up to 18 years. So that's in the record. And then there's just the reasonable inference plus the argument that the counsel made at trial that... or to the judge at trial, not in front of the jury, that he did receive a lesser sentence than we would anticipate. He is only going to have to do three years in prison despite his extensive criminal history. Could he have had good time? Do we have any idea what else he was entitled to? Well, I mean, the issue of good time aside, that's based on he got to receive a six-year sentence and assuming day-for-day credit, he'll have to do three years. But even so, it's not so much a matter of did he receive a benefit or did the state actually cut him a deal for this evidence. It's an issue of what was in Tony Polk's mind when he first went to the police and said, I have this information about Mr. Flores' case. And even Mr. Polk eventually acknowledged that he was trying to receive some sort of sentencing reduction in exchange for this information. He testified he was doing it out of the goodness of his heart, but then he later went on to testify that he eventually talked to his trial attorney about it. And his trial attorney advised him that, well, if you want anything real out of this, you should have told me sooner before you talked to the police. So how do we know the impact of his testimony on the jury as a whole? Maybe they didn't believe a word out of his mouth. Well, we can't say for sure. We wouldn't know. But what we do know is two things. Number one, he is the only witness who spoke to the issue of shared intent. So ultimately, if this court were to find that there was insufficient evidence regarding the common criminal design element, then his evidence is the only evidence supporting a shared intent theory. Right. So they're arguing common criminal design. Yes, that's what they're arguing now. At trial, they asserted both. So the jury had both before them. And for all we know, that's what the jury convicted on, was shared intent, because they heard from Tony Polk. They did not know about Tony Polk's motivations to lie because they did not know about his criminal history. So they had every reason in the world to believe him. As far as they knew, he was this guy who just came forward out of the goodness of his heart, as he said, and testified to this. And what's important is the jury was told about other witnesses' prior convictions. One of the child witnesses had a prior conviction. I believe she said it was for a battery, but it was actually for a robbery. So there was even a stipulation from the state and the defense regarding what her conviction was actually for. There were some of his prior convictions that came in. Yes, but none of the extensive list of convictions that would have gone to his background. They didn't know that he had a prior for robbery, that he had a history of domestic violence. But that's only relevant if it goes to his motivations or some deal, as Justice Conner is asking you about, and there's no evidence of any deal. There's no evidence of any deal. How does that become an underminement? You don't have any objection to what the judge did undermine? Yeah, if this were just an undermining, this wouldn't be an issue. But it's about the motive to lie. I understand, which has to be tied into some deal. And there's no, right? No, that's where I disagree. There doesn't actually have to be a deal. What matters is what the witness believes he can accomplish when he makes the statements. And how would we determine that? Well, we have Mr. Polk's own testimony that he eventually went and spoke with his attorney and said, hey, I went to the police and I told them about this. Can I get a time cut because of it? And that came up. All of that came up. Yes, but what the jury didn't hear is that he was facing a really severe sentence because of his background. Are we supposed to speculate that the jury didn't hear this one thing, that he was facing a very severe sentence, and that would have turned the case in a completely different direction? Is that what you're saying? Yes, and the reason I'm saying that is because, as I said before, there are the two types of intent. For all we know, the jury convicted on a theory of shared intent. If they believe Tony Polk, that's the only way they can do that, is believing Tony Polk's testimony. He is a critical witness on that theory. So if Tony Polk's a liar. What about the common design argument? What about that? With common design, we don't know that they convicted on common design. That's the problem with your argument. You don't know what they convicted on. They have a lot of evidence, according to the state, on both principles. So, I mean, how do you zero in on this and say that this is the critical turning point that caused the jury to convict him? How do you know that? Well, first, we strongly disagree that there's a lot of evidence regarding common design. I'm just repeating what your opponents think. They think that there's a lot of evidence. I'm just basically parroting their arguments. But to put that issue aside for a moment, the point is we don't know. So when we're looking at what effect could this have had on the trial, since because the verdicts were general, they just found him guilty. They didn't find him guilty under common criminal design or under shared intent. We just have this general verdict director. Could Tony Polk's testimony have been what took the ballots? And if they convicted under shared intent, it absolutely was because it was the only evidence of shared intent. But there's also the problem of the actual weakness of the common design evidence that Your Honor just addressed. Let's talk about that. Let's talk about the closing argument a little bit. Okay. Would you address that? Yes. Now, in terms of the common design, the real problem here is, is there a common design between Destiny and Mr. Flora? Absolutely. A common criminal design. But that's the distinction. There is no common criminal design. Also, you have to answer my question. This fist fight thing, it's just a fist fight between two people. It's just a fist fight. A fist fight can be an assault or a murder. Could it not? No. I keep thinking this argument, oh, it's a common fist fight. I've heard many a complaint for people charging battery. Isn't battery a crime? Battery is a crime, but consent is a defense to simply battery, as the court recognized in People v. Flora. Counsel, please. The intention was to either assault or battery. Is it not? No question? No. I strongly disagree. On Destiny's part? On Destiny's part, well, we don't know what Destiny's intent was when she went versus what she ultimately did. There's no evidence. We don't have any statements from Destiny or anything like that. They intended on having a fight, did they not? Yes. Which would include assault and or battery. Not necessarily, because consent is a defense to simple battery in the state of Illinois. Do you have a case that says that? People v. Ford. People v. Ford sort of and dicta sort of says that? I mean, sort of doesn't really. Is there a case in which somebody has asserted that as an effective defense that's been successful? That is a little more complicated. People v. Ford acknowledges that as a principle. They cite that to People v. Dungeon, I think is how it's pronounced. They also said it didn't work as a defense. Yes. So is there a case where it has worked as a defense? No, because when it works as a defense, the jury quits because there was consent. Okay. Or we could reverse, theoretically. But you don't have a case in which it's been where a conviction has been reversed on that basis. That's correct. Just like the state does not have a case where there's a simple battery and the court has explicitly held that consent is not a defense to simple battery. Let me ask you this. Was it testimony that Destiny went there to fight or to confront the other girl? In different places it said different things. What did she go there for? Your Honor touches on a complicated part of this record. Some witnesses indicated that she went there to confront. Some indicated that there was a plan for a fight. It's unclear because most of the witnesses we're dealing with are young people. This trial happened well after the events, and so we can't say for sure. But the sort of general, the weight of the evidence, I would say, is that Destiny was going there to confront the girl who was bullying her and with the intention of maybe getting into a fight. If punches needed to be thrown, they would be thrown. But there is no evidence that anyone prior to the incident discussed using weapons, discussed shooting, discussed killing, anything like that, except for Tony Hook. But the common criminal design cases don't say that you have to have discussed the ultimate act, which was a murder. You don't have to discuss that in criminal design. If there's an intent to do something illegal, like batter or assault, that's a criminal intent. If there is a common design to commit a crime, yes. Here, there wasn't that because... Maybe the jury believed there was a common intent to have a fight. It's entirely possible. That's actually the entire point of the second issue in our case is, yes, I mean, the jury probably did believe that there was a common design to have a fight here, and the State repeatedly told the jury that that's enough. Depending on what that fight is like, that might be enough, right? I mean, I guess a fight can be a lot of things. I could have a fight with my daughter. I could have a fight with my husband. Probably not a crime. A bunch of people on the street with rocks and bottles, probably a crime. What is your defense? What is your client's defense that the agreement was not to do something criminal? Well, the issue isn't what did Destiny intend or what did your client agree to. In the best possible scenario for you, what did your client agree to that's not criminal? The only thing that the evidence establishes is that he agreed that Destiny would go to the scene, confront the girl who was bullying her, and that maybe there would be a fistfight. There's no evidence whatsoever that they planned for anything more than that. So what he does come down to is a simple fistfight that's not in a public way, that doesn't meet any of the other aggravating factors for an aggravated battery. That's just like the gun that was used to kill the girl, right? I mean, does that factor in here somewhere? Your client, you know, he'd bring a gun somewhere with the intent that the other person, that there's going to be a confrontation. Does that have any applicability to what you're saying, to what happened? Well, yes, he did bring the gun to the scene. And that's where it gets complicated, is why did he bring the gun to the scene? Yeah, why? Why did he bring the gun to the scene? And if we set aside Tony Polk for a minute, just get rid of him. When we're talking about the witnesses who were actually there, the indication seems to be that he was bringing the gun to the scene just in case. Just in case what? Well, we need to look a little bit into Mr. Flores' history in that particular part of town. He himself had been a victim of gun violence. His brother had been a victim of gun violence. He knew that sometimes kids get a little bit out of control in something that's intended to be a fairly mild interaction. So bring the gun to shoot them just in case? I mean, counsel, doesn't People v. Phillips say that the defendant promoted or facilitated an action by the shooter? Promoted or facilitated? Promoted or facilitated with the intent to further some common criminal design. A common criminal design would be to have a fight and violate the law, but it turned into a murder. So he didn't facilitate her, did he not, bringing that gun? The bringing of the gun did, I mean, ultimately, yes, there couldn't have been a shooting without the gun. But the question is, why did he bring the gun to the scene? Did he bring the gun to the scene for Destiny to commit a crime with it? What was his testimony? His testimony was that he brought the gun. His niece had come to him and said, this girl's making death threats. She's picking on me. I want to confront her. I need to confront her. So he brought the gun to the scene, like I said, in case things got out of control, in case this simple confrontation between teenage girls went too far, somebody else took a bad act. Well, can you tell us about the testimony that he told Destiny to give the gun to her aunt? Yeah, and that's exactly where I was going to answer your honor's question, is he testified that he brought it to the scene, and Mr. Ford uses a wheelchair, so when he actually got to where the fight was going to occur, it's sort of a unique street where you can't just cross the street simply in a wheelchair. There are a bunch of boulevards with grass and everything, so he couldn't cross the street to go there and defend his niece just in case. So what he did was a bad decision. He gave the gun to his niece to give to her aunt, who is able-bodied and could cross the street with her, and have it just in case, which is something that people do every day in America. We see it through the eyes of the gun violence we deal with in Chicago, but people carry guns for self-defense. So couldn't he have withdrawn from this? He stayed around until the shooting happened, and then when it was over, after he provided the gun, he took possession of the gun from her after the shooting. Did he call the police? No, he did not call the police. Did he call a hospital or ambulance to try to get help for the person who was shot? He did not, but the police and ambulance were there almost immediately. He didn't withdraw. He remained at the scene, got the gun, and left with the gun on his lap. He didn't really have a lot of time to do anything else. The police arrested him quite shortly after the incident occurred. He had the gun on him. Yes, well, not exactly when the police arrested him because there was an intervening act with the operating power of the gun. He had possession of the gun. Yes, he did have possession of the gun. Thank you. A few more questions. Your time is up. We want to reserve some time for your questions. All right. If there are no further questions, let's have one more question. Thank you. Good afternoon again. May it please the Court, Mary Hudson doing? I agree with one thing with the defense counsel. This is a horrific case. This is a terrible, terrible case. It's a terrible crime that happened in our city to a 14-year-old girl. I do not agree that this is a complicated case. We defended what's accountable, the crime that Destinee killed India Martin. Was everybody who came to that fight accountable? Everybody that she brought here? No, Your Honor. Why? Because they didn't give Destinee the gun. But that's not what made them accountable. They came with forks and rocks, and they came to help Destinee fight. You're right, Your Honor. People were being nice. There was a remedy bottle. You're right. Those are 14 and 15-year-olds. Those are 25-year-old men who was a victim of a gunshot, who knew right from wrong. Now, in your mind, would all those people be accountable? No. Everybody who came to a fight? No. Defense accountable because he facilitated the commission of this crime. He had the intent to facilitate. And what crime? What crime did he facilitate the commission? Giving Destinee the gun. He facilitated the commission of what crime? Of the battery, of an aggravated battery with a firearm. No, but the common design wasn't to shoot anybody. No. Other than the Tony Puck testimony, which you pretty much moved away from. Other than that, there was no common design to shoot anybody. The common design was to do what crime? It was to arm Destinee with the gun in case something happened. He gave her... To arm her is the crime? Well, number one, he was a convicted felon. And number two, no F.O.I.D. card. But with regard to... But what does that have to do with the common design? I mean, I think we can all agree that a convicted felon shouldn't be riding around with a gun. But that's not the issue here. So I still need you to make the connection between his having the gun, being a convicted felon, and Destinee using that gun to kill another girl. Defendant was well aware that she was in this fight with this other girl. And defense counsel is saying it's just a mere fist fight. It wasn't a mere fist fight. But is that enough for accountability? If you're aware, you went to the scene, you provided the gun ostensibly to go to some... to be given to another relative, is all of that... Yes, it does. Because you have to look at the testimony and the facts of this case. And you have to see what led up to all of this. The defendant was aware that Destinee was in this fight with this verbal fight over a boy. The defendant knew that Destinee was upset. He met her the day... But is that enough, counsel? Yes. If he knows that she's upset and he goes with her to the scene and he has a gun, he shouldn't have a gun because he's a felon, he's convicted. Is that enough? Yes, because he's bringing the gun to a fight between juveniles. He knows that she wants the gun. Repeatedly that day, he said, she kept on calling him, I want a gun, I need a gun. They go and meet at 3 o'clock, right before the incident occurred. She's staying angry, she's agitated, she's upset. We have eyewitness testimony to what her demeanor was. She was very upset at the time. The defendant showed her the gun, then went with her to the crime. Went with her to the scene of where this was going to happen. And then he arrives to the scene, and Vendetta is also there. She's also on the bus with the other girls and with Desiree. And he arrives at the scene. How is it that Vendetta wasn't charged with this crime? Vendetta was charged with other crimes. She was not charged with this? Because, indeed, according to what the testimony was, she's the one that gave the gun to the juvenile to kill the other girl. Well, if you look at the testimony, the testimony was, and as I just started to allude to, there were more than two or three people. Nikki testified that she thought it was just going to be a fight between her, Destiny, Tila, and Tila. And, Destiny, arrives to the scene. There's a commotion going on. You can see it on the video, both fast and quarter speed. Exactly. It's really two people. What you just said, that Destiny thought it was just going to be a fight between them. What Destiny and Nikki did, Your Honor, Nikki testified that she thought it was just going to be two people. Not Destiny. Destiny knew it wasn't going to be two people because she texted all her friends to go. Tiny. She texted Tila. She texted these people that she wanted to go. And that's all very interesting. But how does that tie the defendant to the common design? That's what I want to know. Defendant, when he arrived to the scene, armed with that weapon, and he saw, he even testified, he saw the teenagers, the frenzy that was going on, everybody running, people running up to Destiny. Come on, come on, we've got to go. Defendant giving her the gun. If defendant wanted to give Vandetta the gun, he could have given her the gun. Because if the defendants say, I gave her the gun, but I said give it to Vandetta. Was the testimony the defendant and Destiny were on the curb by themselves and Destiny had to take the gun across the parkway or something to Vandetta? Isn't that what the testimony was? Well, the testimony also was that Vandetta was with the defendant and with Destiny. They were both of us arriving to the scene. They all rose together. So if defendant wanted Destiny to give Vandetta the gun, defendant should have given Vandetta, the other adult, a gun. Not his agitated, angry, young niece, who he's supposed to be protecting. But there's no question that Destiny did give Vandetta the gun. And I'll tell you why she gave the gun. Because we evaluate his testimony, both Nikki and Deanna Wright, who was also present. What happened? When Nikki comes down the stairs, Destiny's young, come down the stairs, come down the hair. She tries to hit her with the gun, and then she points the gun at Nikki and says, I'm going to kill you, bitch. She tries to pull the trigger. Deanna Wright, 23-year-old present there, testified to this as well. And the gun jammed. She gave the gun to Vandetta. In the meantime, Nikki runs upstairs to get away from this. And we acknowledge that she did have a lock on a string when she came down. But at that point, Vandetta and we have eyewitnesses gave it back because Vandetta fixed the gun. Fixed the gun for Destiny. But the gun wouldn't have needed to be fixed had the defendant not brought the gun into this case. Well, we're long round and round here. I think we can all agree that the defendant had no business riding around with the gun. He's a convicted felon. But is it enough that a convicted felon brought the gun to that location to satisfy the principles that you need to satisfy the defined accountability? That's what I want you to address. Nothing else. Your Honor, I am addressing him. I'm saying that he brought the gun to promote and facilitate the crime. And the crime is the battery, at a minimum, of Nikki. But again, you're looking at the intention was two, three girls against each other. You have 25 to 30. And I know you've watched that video. And it's a horrific video to watch. But that's what it was. Let's just back up for a second. So I think, agree with you, plenty of circumstantial evidence that some people went there with the understanding that something was going to happen that was criminal. The defendant's position and his testimony was, I went there with the understanding that it wasn't going to be criminal. It was going to be a confrontation. She was going to back down her accusers. So he had a defense that he articulated that the jury rejected. I understand that. But he did have a defense. You would agree, right? He had a defense that he presented a defense. And the jury did not buy a defense because they came back in two hours with a guilty verdict. I understand. But you, not you, but your office, at argument said it was undisputed that the state, the first proposition that the state must prove is that the defendant, a one for whose conduct he is legally responsible, with arm or the firearm, caused the death of India Martin. Well, that is undisputed in this case. How is that undisputed in this case? It was the people's view of what the evidence showed. And the evidence showed that destiny is the rule. When we were talking about what the evidence were of murder. How is it undisputed that he's accountable for what destiny did? Because the people are arguing the facts, just as I'm arguing with you today, that the evidence did show that the defendant knew what was going on, knew about the fight. They didn't say the evidence is going to show. They said it's undisputed. But it's argument, Your Honor. It's argument where we can show what we believe. And the defense objected and the court overruled the objection. And the court then stated, I will instruct you as to what the lie is. And the court did properly instruct. And you think that's irritant? Absolutely. The court went through the injury instruction regarding accountability, exactly what the people needed to prove. And as a matter of fact, the State also went through the proper elements of accountability. And the State says it's true. The judge did not directly, either directly or indirectly, address the comment about it being undisputed. And that's, I think that's a big deal in this, because that's the whole case. Well, defense counsel, his closing argument, he did argue that it was disputed. And he did challenge that the defendant was not accountable. So he did challenge the people's two words, two times they said it in the 55-page closing argument, said it was undisputed. The defendant did respond to that vigorously and said that they disputed it, that this is what their evidence showed, and that he didn't. However, the trial court has a very important role to play. When the judge is sitting there and the State says something that is improper or not quite accurate, and the judge goes along with it or allows that, it gives the impression that it's correct, doesn't it? In this case, again, as I just mentioned, it was only twice. It was not the theme throughout. We did not say it was the theme throughout. All we argued was what our evidence showed. And defense counsel was able to respond to that. And then the judge did give the proper jury instructions. So can I ask you a question about the common design argument in this case? Is it any different than the case of People v. Phillips where a fellow decided, I'm going to go fight. I'm going to go to a fight. You come with me. And the guy going with him said, you know, I might bring something with me. So we get to the fight. The fellow says, oh, I'm not going to fight now, whatever, I'm going to leave. And the defendant then turns and shoots the rifle and kills somebody. Well, isn't that common design, which is very similar to what we have here? Yes, it is. And that's what the position that we have here. I think it was the friend that he brought because it was to identify somebody. But the defendant was held accountable of that, just as our defendant was too. But there was also the understanding that there was no weapon going to be brought. And the defendant all along, when Destin wanted the weapon, he was bringing the weapon, showing her, don't worry, I've got it. But the defendant, the testimony was to shoot. The defendant had taught Destin how to shoot the gun. It was weird that she knew how to do it. And there was a battle testimony. It was with Tony Polk. Tony Polk. But even without Tony Polk's testimony, the defendant had showed his niece repeatedly that he had the gun, that he knew he was going to confront her. As a matter of fact, when he said to her, when he gave the gun to her, he said, you go confront her. No, don't let those girls pull on you. So this was a common design. It was an intent to promote and facilitate the crime. And the defendant was properly found guilty under the theory of accountability. Let me briefly touch on Tony Polk. And defense counsel says that they, you know, their argument that they were not allowed to cross-examine their prisoner of defense. The information that they wanted to get with regard to all those past convictions of Tony Polk, and it was not extensive, extensive. Yes, he had domestic violent battery. Terrible offense. Violation of protection. Playing blackjack on the street. Have the State looked into any of that, any of his past, or tried to verify what kind of witness he would be before they put him on the stand? No, that's not part of the record. And I have no independent knowledge of that. But what I can tell you is that the jury was aware that he was facing 4 to 15, not 4 to 18. It was 4 to 15. The jury was aware. On cross-examination, defense counsel was asked, able to ask Tony Polk, do you know what you were going to get? Yes. 4 to 15. What did you get? 6. Is that a 50-50 time? Yes. Are you out in 3 years? Yes. That information got before the jury. The jury heard it. So bringing in all these prior convictions, which were excludable under Montgomery, was appropriate. Do you think Montgomery is the end of the inquiry, that there is no inquiry beyond Montgomery? No, Your Honor. And that's why we're viewing the record. I mean, Montgomery has very strict parameters. Our cases fit or, I'm sorry, Tony Polk's convictions fit under that. And the Court, you look at the records, painstakingly made a decision regarding each single inquiry. Under Montgomery. But he didn't do any analysis outside of the Montgomery analysis. I think the record is pretty clear on that. You're right, Your Honor. And do you think that was appropriate? Do you think once you've done the Montgomery analysis, no matter what the defense or whatever party wants the evidence in for, you're done, the Court is done? Well, our position would be yes, Montgomery does control. But then when we look at the record in this case, defendant got to cross-examine Tony Polk about the prior convictions, not the prior convictions, the aggravated robbery, which he was in for. So the information that defense counsel says the jury didn't know, they were well aware about what this witness said. They were also well aware that he possibly had a motive to testify. But they asked him, what did you expect to get? I didn't expect to get anything. I mean, again, let's look at the facts of this case. 14-year-old has a gun. Murdered another 14-year-old boy. Even when we have the testimony, when we look at Tony Polk's testimony, right when he heard about this, he says he gave somebody a gun? I mean, the facts of this case are very specific. Do you agree that this is second-pronged plain error? With regard to that robbery? That if he should have done an analysis beyond Montgomery, that it was a second-pronged plain error? No, because defense counsel was able to get this information before the jury. He still was able to get what they were trying to defend. So you're saying it's harmless if it was a – what are you saying? Well, I'm saying it's error, because I'm saying that it was a proper analysis and I'm saying that he also was able to get this information. So our position is there is no error. And even if you take Tony Polk's testimony out of the whole equation of establishing accountability, the evidence established the defendant was accountable for the murder of Endia Martin and the attempted murder of Mickey Reynolds. If there are no further questions, we ask that you approve the defendant's conviction and sentence and all the arguments that we raised in our briefs. Thank you very much. You don't really have three minutes, but we'll give them to you anyway. May I please look at it? Something interesting just happened. This court was pressing the state on the issues related to common criminal design. You went through it and went through it and went through it, and what did the state ultimately do? They brought up Tony Polk. And that is what could have happened in that jury room. Because common criminal design is complicated and ugly in this case, and there is a real possibility that that jury came back to, well, Mr. Polk came in and he told us they planned this ahead of time. Guilty. That is why, at a minimum, this court should order a new trial. But that aside, let's get back to the issue of common criminal design for a moment. The state told you that there was common criminal design because Destiny went to Mr. Floor and said, I want a gun, I need a gun, I want a gun, I need a gun. So he knew what was going to happen. But you know what none of those statements were? I want to shoot NDEA. I want to shoot Nikki. I want to kill NDEA. I want to kill Nikki. Those statements, there's zero evidence of that. Counsel, any other criminal design cases, there's no statements like that either, and the court still found common criminal design. But there has to be, in all of those cases, there's some sort of crime that's agreed to. Well, Michael said we have a crime battery, but you disagree. Yes. But there's, regarding the gun, there's no evidence of an attempt to shoot, of any sort of intent to shoot, any intent to use the gun in a crime. Then you would have the other kind of, you would need common criminal design. If there was a shared intent to kill, you wouldn't need to get to common criminal design. And other than Tony Polk, I think the state agrees with you, there's no evidence of shared criminal intent. It's common criminal design. So the question is, what they agreed to, was it a crime? And I think what they agreed to is a little mushy. It's a little unclear what they agreed to. There's all sorts of circumstantial evidence about what they agreed to. There's your client's testimony about what they agreed to, and it's kind of all over the map. But some of it is a crime. Some of what was suggested was going to happen might be a crime. Worst case scenario is they agreed to a fight. Nobody ever testified that they talked about any sort of use of the weapons ahead of time, that Mr. Flore knew about that. And interestingly, the state relies on all these other children who went to the scene and uses that as evidence that there was a common design for something more than a simple fight. But notably, there's no evidence that any of those kids joined into the fight. There's no evidence of anyone else hitting anybody, choking anybody, using a weapon against anybody. It's just Nikki and Destiny, and things got out of hand, and there are tragic consequences. But just because there are tragic consequences does not mean there was a common criminal design. But, even if the court disagrees, and says there's obviously a crime here, battery's a crime, end of the day, that doesn't change the fact that Tony Polk got up there and testified, and the jury did not know that Tony Polk was facing a serious sentence because of his criminal background. And that, in and of itself, is first-pronged plenary, an address in the briefs, and second-pronged plenary, as we've discussed here today. So, for that reason, at a minimum, a new trial is required. And, with less than, the sentencing issue is raised in the briefs. Thank you. Thank you both. And, as you do, a really good job. Thank you. The briefs were excellent, and the evidence was good. We're going to take a recess, I think. A brief recess, and we will return.